TITLE AND TRUST COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21593. Promulgated October 16, 1950.

Clarence D. Phillips, Esq., for the petitioner.
John H. Pigg, Esq., for the respondent.

**514**

OPINION.

ARUNDELL, *Judge:* The only question here is whether petitioner properly excluded the amount designated as "unearned premiums" from its title insurance premium income. This depends upon whether the $46,889.63 so excluded constituted unearned premiums within the meaning of section 204 (b) (1) (4) and (5) of the Internal Revenue Code.[1]

---

[1] SEC. 204. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL.

\* \* \* \* \* \* \*

(b) DEFINITION OF INCOME, ETC.—In the case of an insurance company subject to the tax imposed by this section—

　(1) GROSS INCOME.—"Gross income" means the sum of (A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of. Insurance Commissioners, and (B) gain during the taxable year from the sale or other

In *Early* v. *Lawyers Title Insurance Corp.*, 132 Fed. (2d) 42, Judge Parker, speaking for the Fourth Circuit, declared that such portions of title insurance premiums as were given for a specified period the status of unearned premiums by either law or contract should likewise be treated tax-wise as unearned premiums under section 204 (b), *supra*. It was subsequently held by the Second Circuit that a state statute did not impart to title insurance premiums the status of being "unearned" where it was impossible to determine whether the portions of the premiums required by the statute to be set aside as a reserve would ever be released and become "free assets" of the company. *City Title Insurance Co.* v. *Commissioner*, 152 Fed. (2d) 859.

Deductibility of the statutorily prescribed reserves out of title insurance premium income thus turns on whether the local statute calls for a mere insolvency reserve of indefinite duration or whether the required reserve is established by segregating a portion of the premium income for a specified period when the risk of loss is presumably greatest. In the latter instance, the reserve becomes taxable income to the company when it is released for general corporate purposes at the expiration of the prescribed period. *Commissioner* v. *Dallas Title & Guaranty Co.*, 119 Fed. (2d) 211.

Respondent does not question the authority of *Early* v. *Lawyers Title Insurance Corp.*, *supra*, (see I. T. 3798, 1946–1 C. B. 127) but argues it is not applicable because the reserve here in question was set up under a directive of the Oregon Insurance Commissioner instead of under the direct mandate of an Oregon statute.

The Insurance Code of Oregon embodied in Title 101 of Oregon Compiled Laws Annotated (O. C. L. A.) gives the Insurance Commissioner under section 101–105, O. C. L. A.,[2] authority to issue such department rulings, instructions and orders as he deems necessary to

---

disposition of property, and (C) all other items constituting gross income under section 22; except that in the case of a mutual fire insurance company described in paragraph (1) of subsection (a) of this section, the amount of single deposit premiums paid to such company shall not be included in gross income;

* * * * * * *

(4) UNDERWRITING INCOME.—"Underwriting income" means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;

(5) PREMIUMS EARNED.—"Premiums earned on insurance contracts during the taxable year" means an amount computed as follows:

From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year. * * *

* * * * * * *

[2] § 101–105. General powers and duties of commissioner. (1) The insurance commissioner shall have and exercise the power to enforce all the laws of the state relating to insurance, and it shall be his duty to enforce all the provisions of such laws for the public good. He shall issue such department rulings, instructions and orders as he may deem necessary to secure the enforcement of the provisions of this act, but nothing contained in this act shall be construed to prevent any company or persons affected by any order or action of the insurance commissioner from testing the validity of same in any court of competent jurisdiction.

* * * * * * *

secure the enforcement of the Insurance Code. Concerning insurance reserves, section 101–137, O. C. L. A., provides as follows:

§ 101–137. Examination: Reserve: Liability: (Formulating or adopting rules). In ascertaining the condition of an insurance company under the provisions of this act, or in any examination made by the insurance commissioner, his deputy, or examiner, he shall allow as assets only such investments, cash and accounts as are authorized by the laws of this state at the date of the examination, or under the existing laws of the state or country under which such company is organized and which investment he may approve or reject, but unpaid premiums on policies written within three months shall be admitted as available resources. In ascertaining his [sic] liabilities, unless otherwise provided in this act, there shall be charged the capital stock, all outstanding claims, a sum equal to the total unearned premiums on the policies in force computed on a pro rata basis, and such an amount as may be found necessary as a reserve to provide for the future payment of deferred and undetermined claims for losses and promised benefits. In determining the amount of such reserve or unearned premium liability, the insurance commissioner, his deputy or examiner may formulate such rules as he may deem proper and consistent with law or he may adopt such rules as are used in other states or approved by the national convention of insurance commissioners.

Acting pursuant to section 101–137, O. C. L. A., *supra*, the Oregon Insurance Commissioner directed the petitioner "to segregate and maintain an unearned premium or reinsurance reserve as hereafter provided, which shall at all times and for all purposes be deemed and shall constitute unearned portions of the premiums * * *." The reserves were required to be 3 per cent of total premiums received on policies issued during 1942, 1943, 1944, and 1945 and 3 per cent of monthly premiums received thereafter. After 180 months, such portion of the reserve as had been established for more than 180 months would be released for general corporate purposes.

From our reading of the Oregon statutes and the directive issued to petitioner by the Oregon Insurance Commissioner, we perceive nothing to indicate that the Insurance Commissioner exceeded the bounds of his statutory authority to make rules concerning reserves. It should be apparent that a valid exercise of the discretion entrusted to the Insurance Commissioner by the Oregon statutes should have equal weight and effect as the statutes themselves. *Maryland Casualty Co.* v. *United States*, 251 U. S. 342. See also *Fidelity & Deposit Co. of Maryland* v. *United States*, (D. C., Md., May 19, 1949), affd., 177 Fed. (2d) 805, rehearing denied, 178 Fed. (2d) 753.

Respondent urges in the alternative that so much of the $46,889.63 as is attributable to premium income received in the years 1942, 1943, and 1944 cannot properly be excluded from petitioner's premium income in the taxable year 1945. Allowance of such an exclusion, asserts respondent, would distort petitioner's 1945 income. We cannot agree. Petitioner was required by the directive of the Insurance Commissioner to set aside in the reserve a sum equal to 3 per cent of its

premiums received on policies written during 1945 and the 3 preceding years. Although measured in part by premium income in the 3 years prior to 1945, the reserve was taken from 1945 income and thus made unavailable to the company for general corporate use the funds so restricted. The amount of the reserve was, therefore, properly excluded from "earned premiums" in 1945 when for the first time the State of Oregon required the establishment of this reserve. A like question faced the Circuit Court in *Early* v. *Lawyers Title Insurance Corp.*, *supra*, p. 46, where it was held that deduction of the portion of the reserve attributable to title insurance contracts issued prior to the effective date of the state statute there involved did not distort the insurance company's income in the taxable year. We are in accord with the result reached by the Circuit Court.

We conclude that respondent erred in his determination that petitioner cannot exclude from its 1945 premium income the amount required to be segregated as unearned premiums by the Oregon Insurance Commissioner pursuant to Oregon law.

Because of an uncontested adjustment,

*Decision will be entered under Rule 50.*