**COLONIAL SURETY COMPANY**

v.

**UNITED STATES.**

No. 360-57.

United States Court of Claims.

Dec. 2, 1959.

to pay all brokerages, commissions, taxes and expenses in connection with writing the insurance.

For the years 1950 to 1953 the plaintiff reported the full 30 percent commissions received during the year on premiums ceded to North America as income. But in 1954 the insurance commissioner of Pennsylvania required the taxpayer thereafter to pro rate the premiums over the taxable years during which the policy was in force, in proportion to the time the policy was in force in each taxable year. The taxpayer claims it is required to report as income only the net amount of the commissions received, less a reserve for unearned commissions. The insurance commissioner required that this reserve be added to the reserve for unearned premiums. The taxpayer claims the right to deduct them under the provisions of subsection (b) (5) of section 204 of 26 U.S.C. (1952 ed.) as unearned premiums.

Section 204(b) (1) defines "gross income" as the combined gross amount of investment income and underwriting income, gain from the sale or other disposition of property, and all other items constituting gross income under section 22, 26 U.S.C. § 22. Subsection (b) (4) defines "underwriting income" as "premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred." Then subsection (b) (5) defines "premiums earned on insurance contracts during the taxable year" as follows:

"From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year."

■ There can be no doubt that commissions received from the Insurance Company of North America by the taxpayer clearly come within the definition

Samuel H. Levy, Philadelphia, Pa., for plaintiff. Bernard Wolfman, Marvin Katz, and Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., were on the briefs.

Jerome S. Hertz, Washington, D. C., with whom was Asst. Atty. Gen., Charles K. Rice, for defendant. James P. Garland and Lyle M. Turner, Washington, D. C., were on the brief.

WHITAKER, Judge.

Plaintiff is a Pennsylvania stock casualty company engaged in the business of insuring against damage to automobiles. It is wholly owned by the First Pennsylvania Banking & Trust Company. This bank finances the purchase of automobiles; plaintiff's principal business is insuring the automobiles financed by the bank.

Plaintiff reinsured the business it wrote with the Insurance Company of North America, under which North America assumed liability for 90 percent of the losses under the policies and agreed to pay 90 percent of the expenses of adjusting the losses in return for a cession to it of 90 percent of the gross premiums. In addition, North America agreed to pay plaintiff a commission of 30 percent of the net premiums ceded to it, out of which plaintiff was required

óf gross income laid down in section 22, and the taxpayer so treated them in its return for 1950, 1951, 1952 and 1953.

■■ It is common knowledge that any insurance company pays its agents commissions for writing insurance. Plaintiff had written the insurance which it re-insured with North America. It did not write it as the agent of North America, but when it reinsured the business with North America, it was recognized that it was entitled to the usual agent's commission. Every agent of North America who wrote insurance for it received a commission for doing so. When plaintiff reinsured the business with North America it took on, as between it and North America, the character of agent, and as such it was entitled to a commission on the amount reinsured with North America. The contract between the plaintiff and North America recognized this when it provided that plaintiff should receive a commission of 30 percent on the business reinsured with North America.

■■ Since the income was commissions on business written for another, and not premiums the insurer was entitled to, it is clear that the taxpayer is not entitled to deduct a reserve set up in anticipation of the possibility that some part of the commissions will have to be refunded. Every insurance company sets up a reserve for unearned premiums, but this is not done in anticipation of the possibility that some part of the premiums will have to be returned, but to take care of anticipated losses on the policies. This was decided as early as McCoach v. Insurance Co. of North America, 244 U.S. 585, 37 S.Ct. 709, 61 L.Ed. 1333; and Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297. This question was carefully considered by this court in an opinion by Judge Littleton in Continental Assurance Co. v. United States, 8 F.Supp. 474, 79 Ct.Cl. 756, in which there was reviewed many of the opinions of the Supreme Court and of other courts bearing on this subject. All these decisions affirm and reaffirm that only an unearned premium reserve

is deductible, and that it is a reserve set up to take care of anticipated losses on policies, and that reserves to take care of the other contingencies, although they are proper to insure solvency, are not deductible for tax purposes.

The wording of the statutes considered in those cases differs from the wording of the statute now under consideration, but they are, in essence and as construed by the Supreme Court, the same. The former statute permitted the deduction of reserves required by law. The Supreme Court and other courts held that this was limited to the unearned premium reserves set up to take care of anticipated losses on policies, and that other reserves to provide for other contingencies, although properly set up to insure solvency, did not come within its terms. This was so even though they were reserves which the insurance commissioner required the company to set up. It was so held in McCoach v. Insurance Co., supra, and in United States v. Boston Ins. Co., 269 U.S. 197, 46 S.Ct. 97, 70 L.Ed. 232, and by us in Continental Assurance Co. v. United States, supra. The statute now under consideration expressly limits deductible reserves to those for unearned premiums. What was subject to controversy before has now been made plain.

This unearned commission reserve cannot be considered as an unearned premium reserve. It was set up for the sole purpose of taking care of the possibility that some part of the commission might have to be returned. The unearned premium reserve is to take care of anticipated losses on the policies. It is the company that carries the insurance and that has to pay these losses that sets up such a reserve, not the agent who secured the business. It was North America, the reinsurer, that had to bear the loss on the policies. Under the contract plaintiff ceded to North America 90 percent of the premiums, and North America agreed to bear 90 percent of the losses on them. Plaintiff was entitled to set up an unearned premium reserve on only the 10 percent retained by it. It was liable for 10 percent of the losses

and to this extent only it could set up and deduct an unearned premium reserve. It was not entitled to set up a reserve for the 90 percent ceded, for the losses on which it was no longer liable as between it and the reinsurer. The commissions were paid on only this 90 percent. It is no more entitled to deduct a reserve for the possibility that it might have to return a part of the commission than is the familiar individual insurance agent, who solicits and secures the business.

The cases cited above hold explicitly that reserves to take care of contingencies, other than anticipated losses on policies, are not deductible.

Plaintiff is not entitled to deduct the reserve for unearned commissions in 1954, the first year the insurance commissioner required the reserve to be set up, nor in the years 1950 to 1953. In the latter years it correctly reported the commissions as income in the year received, and it should have done so in the year 1954, without any deduction.

Plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LITTLETON (Retired), and LARAMORE, Judges, concur.