**TITLE & TRUST COMPANY OF FLOR-IDA, a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 64-277-Civ.-J.

United States District Court
M. D. Florida,
Jacksonville Division.

April 29, 1965.

George Stelljes, Jr., Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, Fla., for plaintiff.

Edward F. Boardman, U. S. Atty., Jacksonville, Fla., J. Patrick Whaley, Attorney, U. S. Department of Justice, Washington, D. C., for defendant.

McRAE, District Judge.

The issue in this action comes before the Court on cross-motions for summary judgment. The sole issue is whether the taxpayer, the plaintiff-corporation, may exclude or deduct from its taxable income the "reserve for unearned income" which it established pursuant to the laws of the State of Florida. All relevant facts have been presented by affidavit and the Government's Requests for Admissions.

The taxpayer is a title insurance corporation organized under the laws of the State of Florida to engage in the business of insuring titles to real property in that state and was engaged in this business in the years 1959 and 1960. In compliance with Section 625.111, Florida Statutes, F.S.A., the taxpayer set up an "unearned premium reserve" on its books. For the year 1959 the taxpayer allocated the sum of $11,682.44 to that reserve, but that sum was not placed in a separate bank account, a trust fund, or otherwise segregated from the taxpayer's general funds. For the year 1960

the taxpayer allocated the sum of $11,-655.99 to this reserve, but that sum was also not placed in a separate bank account, in a trust fund, or otherwise segregated from the taxpayer's general funds. Most significantly, however, these reserves for 1959 and 1960 were not even set up on the taxpayer's books until May 1961.

In its income tax returns filed for the years 1959 and 1960 the taxpayer took no deductions for the aforementioned sums. Taxpayer timely filed claims for refunds for the years 1959 and 1960 with the District Director of Internal Revenue. These claims were disallowed, and this action was timely filed. Both parties have moved for summary judgment.

During the years 1959 and 1960 the taxpayer was taxable as an insurance company under the provisions of Section 832 of the Internal Revenue Code of 1954. Section 832 provides, in effect, that "taxable income" subject to the tax imposed by Section 832 includes, among other things, "premiums earned". Subsection 832(b) (4) provides as follows:

"* * * (4) *Premiums earned.—* The term 'premiums earned on insurance contracts during the taxable year' means an amount computed as follows:

(A) From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance.

(B) To the result so obtained, add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year.
* * * *"

The quoted portion of Subsection 832(b) (4) of the Internal Revenue Code of 1954 first appeared as Section 246(b) (5) of the Revenue Act of 1921, c. 134, 42 Stat. 227, 263. That portion has been re-enacted, without change, in each subsequent Revenue Act and Internal Revenue Code, including the Internal Revenue Code of 1954.

■■ Taxpayer contends that, pursuant to Subsection 832(b) (4), it is entitled to deduct these reserves as "unearned premiums". The Government contends, on the other hand, that such reserves do not qualify as "unearned premiums" within the meaning of that Code Subsection and are therefore not deductible. Deductions are a matter of legislative grace, and only where there is a clear provision for them can an exemption be allowed. Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348.

Taxpayer has failed to demonstrate that its "unearned premium reserve" qualifies as a deduction under the applicable statute.

■ As a general rule title insurance premiums are includible in gross income of title insurance companies and no part of them may be excluded or deducted from gross income for tax purposes. American Title Co. v. Commissioner, 29 B.T.A. 479, aff'd per curiam 76 F.2d 332 (3 Cir.); City Title Ins. Co. v. Commissioner, 152 F.2d 859 (2 Cir.). Taxpayer is attempting, however, to bring itself within the narrow exception to the general rule which was first recognized in Early v. Lawyers Title Ins. Corp., 132 F.2d 42 (4 Cir.) and which has been followed in several later decisions. See Title & Trust Co. v. Commissioner, 15 T.C. 510, aff'd per curiam 192 F.2d 934 (9 Cir.); Washington Title Ins. Co. v. United States, 135 F.Supp. 426, 133 Ct.Cl. 164.

In the Early case, the court approved the exclusion from gross income of that portion of title insurance premiums required by a Virginia state statute to be set aside in an "unearned premium" reserve, because the court concluded that the state statute gave to that portion of the premium so reserved all of the attributes of "unearned premiums", that is, withdrew it from the power of the company to use for the company's general purposes for a specified period of time which was commensurate with

the peroid of probable loss. The rationale behind the exception created by Early is obvious. Premiums of a title insurance company constitute income and should be taxed as such. Where a state statute provides for the creation of a reserve which is segregated from the general assets of the company and which will be treated as earned at the expiration of a specific period of time which is commensurate with the period of probable risk, it has endowed such "unearned premiums" with all those attributes which would be present in the case of unearned premiums on other kinds of insurance. This rationale further recognizes that if the income is segregated and not taxed when received, it may escape taxation altogether, yet if the reserve is to be amortized and brought back into income over a definite period of time, it will not escape taxation and will be taxed at a foreseeable future time when it is brought back into income. See Commissioner v. Dallas Title & Guar. Co., 119 F.2d 211 (5 Cir.).

In the present case, the state statute involved is Section 625.111, Florida Statutes, F.S.A., which provides:

"In addition to an adequate reserve as to outstanding losses as required under § 625.041, a title insurer shall maintain a guaranty fund or unearned premium reserve of not less than an amount computed as follows:

(1) Ten per cent of the total amount of risk premiums written in the calendar year for title insurance contracts shall be assigned originally to the reserve.

(2) During each of the twenty years next following the year in which the title insurance contract was issued, the reserve applicable to the contract *may* be reduced by five per cent of the original amount of such reserve. * * *" (Emphasis added.)

The crucial distinction between this Florida statute and the state statutes involved in Early and the cases which have followed that decision, is that the latter statutes required that a title insurance company shall return certain amounts to the company's "free assets" at a specific time, whereas the Florida statute under consideration merely provides that a title insurance company "may" return certain amounts to free assets. The Florida statute thus fails to insure that any amounts will definitely be required to be returned to income and therefore become taxable. For this reason, the reserve created under Section 625.111 fails to qualify under the Early exception.[1]

Furthermore, even assuming arguendo that the Florida statute in question is not distinguishable from the Virginia statute involved in Early, the facts in this case would preclude the taxpayer from recovery, for the reason that the taxpayer did not even establish the reserve on its books until May 1961, and admittedly did not segregate those funds from its general assets. Taxation is based upon an annual accounting concept. It is axiomatic that a taxpayer is taxable upon the income which it beneficially enjoys. See Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

In the present case the taxpayer in the years 1959 and 1960, the years for which it claims the deduction, had unfettered control and use of the premiums for which it claims deduction. Thus, it cannot now assert that it was entitled to exclude such premiums on the mere

1. The Government also argues that the Early exception requires that a reserve, to qualify as unearned premiums within the meaning of the Code section, be impressed with a trust to insure that the company will not be able to use the funds for its general purposes, but the Court, in view of its disposition in this action, finds it unnecessary to pass on the question of whether the Florida statute in question impressed the reserves created thereunder with a trust.

strength of reserves which were not even entered on its books until May 1961.

For the above reasons, judgment will be entered in favor of the defendant and dismissing the plaintiff's complaint.